*W. March*, *A. Steel* and *H. D. Thompson*, for the appellee.

*May Term, 1856.*

*The Indiana Central Railway Co. v. Potts.*

---

THE INDIANA CENTRAL RAILWAY COMPANY *v.* POTTS and Others.

It is the duty of the Courts, under the constitution, to determine, whenever the question arises, whether the subject of a statutory provision is properly included in the title of the act of which it is part.

It is necessary, under s. 19 of art. 4 of the constitution, that every statute shall have a title; that the title shall designate a single subject for the act; and that such subject shall be reasonably particular and not too general.

May Term,
1856.

THE INDIANA
CENTRAL
RAILWAY CO.
v.
POTTS.

As a general rule, the title of an act should not express the end, object or purpose to be accomplished, but rather the means by which such end, &c., is to be accomplished.

In the adoption of s. 19 of art. 4 of the constitution, two purposes were had in view: 1. To have the title indicate the subject-matter of the act, and 2. To promote the codification of the statutes.

Under the constitution the criminal and civil codes should be distinguished by distinct titles.

The suit to recover a penalty provided for by section 25 of c. 102, 1 R. S. 1852, is a civil suit and is no bar to a criminal prosecution.

Section 25 of c. 102, 1 R. S. 1852, is not void as not being properly included within the title of the act of which it is part.

Wednesday,
June 18.

APPEAL from the *Hancock* Circuit Court.

PERKINS, J.—Suit by township trustees against a railroad company, for obstructing a highway. The suit was commenced before a justice of the peace, where, as on appeal in the Circuit Court, there was judgment against the railroad company.

The action is founded upon the 25th section of chapter 102, of the 1st vol. of R. S. 1852, which is entitled, " an act providing for the election or appointment of supervisors of highways, and prescribing certain of their duties, and those of county and township officers in relation thereto." 1 R. S. 1852, p. 462. The 25th section of the act is in these words :

" Any person who shall injure any drain, dam, embankment, ditch, or other construction, made for the protection of any highway or bridge, or who shall wilfully destroy any guide-post, or deface any inscription or device thereon, or who shall unnecessarily, and to the hindrance of passengers, obstruct any highway or bridge, and who shall, when driving any vehicle, fail to keep to the right when meeting another vehicle, so as to allow it to pass without injury, for every such offence such person shall forfeit the sum of five dollars, to be recovered before a justice of the peace of the county, in the name of such trustees, by the supervisor of the district; and in case of such obstruction, for every day the same is continued, such sum shall be recovered; and in all such cases, such supervisor, within three days after receiving information of any such forfeiture, shall commence such suit, and the sum recovered thereon

May Term,
1856.

THE INDIANA
CENTRAL
RAILWAY CO.
v.
POTTS.

shall be paid to the treasurer of the township for the benefit of the highways of such district." 1 R. S. 1852, p. 467.

The position is taken by counsel for the railroad company, that this section of the act was not enacted in accordance with sec. 19 of art. 4 of the constitution of the state, and is, therefore, invalid. The section of the constitution reads:

" Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." .

Per *Lumpkin*, J., in *Prothro* v. *Orr*, in the Supreme Court of *Georgia*:

" It has been suggested that the prohibition in the seventeenth section of the first article of the constitution [of *Georgia*], ' nor shall any law or ordinance pass, containing any matter *different* from what is expressed in the title thereof,' is directory only to the legislative and executive, or law-making departments of the government. But we do not so understand it. On the contrary, we consider it as much a matter of judicial cognizance as any other provision in that instrument. If the Courts would refuse to execute a law suspending the writ of *habeas corpus* when the public safety did not require it, a law violatory of the freedom of the press, or trial by jury, neither would they enforce a statute which contained matter *different* from what was expressed in the title thereof.

" We are familiar with the history of this clause in the constitution, and the striking event which gave rise to it. The necessity for its observance increases with each successive session of the legislature." Am. Law Reg., vol. 1, p. 616. .

If such would be the rule of decision under a provision simply declaring that acts should not contain matter different from what was expressed in their titles, much more certainly is it the duty of the Courts, under the provision

May Term, above quoted from our constitution, to test acts of the
1856. legislature by it. Indeed, the section may be regarded as
THE INDIANA expressly requiring the Courts to do so. It declares that
CENTRAL
RAILWAY Co. acts shall be void only as to matter not properly embraced
v. by the titles. It assumes that the law-making power will,
POTTS.
in the short time allowed for the discharge of much busi-
ness, improperly confound matters under a given title, and
charges the Courts, who act deliberately, and generally
upon much discussion by counsel, with the duty of weed-
ing out and classifying sections, aiding, in short, in estab-
lishing proper rules for distributing subjects in legislation.

The constitution, then, in this case, imposes upon the
Court the obligation of determining whether the section
of the act upon which this suit was brought, is properly
included in the act as entitled.

We proceed to discharge the duty.

" Every act shall embrace but one subject and matters
properly connected therewith; which subject shall be ex-
pressed in the title." This is the fundamental provision;
and under it, it is plain that,

1. Every statute must have a title. And,

2. That that title must designate a single subject for the
statute following it. And we lay down the proposition—

3. That that subject must be reasonably particular and
not too general; for otherwise the object of the constitu-
tional provision would be wholly thwarted. A part of the
object of that provision was that the title should indicate
the character of the sections of the act. To effect this ob-
ject, the title must be reasonably particular; and, to secure
such particularity, as a general rule, titles should not ex-
press ends, objects, or purposes to be accomplished, but
rather means by which ends are to be accomplished. Laws
operate on men, things, actions; they secure results but are
not enacted upon results. There are doubtless exceptions,
but these are general propositions. Examples to illustrate.
An act to promote the general welfare of the state. What
indication would such a title give of the character, of the
subject-matter, of the sections of a statute? So, an act
to promote good morals. Such a title would give no in-

formation of the statutory means to be used to accomplish
the object.   Again.   Suppose a bill introduced into con-
gress to facilitate transportation on the *Ohio* river.   Such
a title would express the object to be accomplished, not the
subject or subjects which the sections of the law would
embrace as means of accomplishing the object; and under
such a title might be found sections incorporating a navi-
gation company, with millions of capital, to engage in the
transportation and boat-building business—for the inspec-
tion and licensing of boats, the building of light-houses,
buoys, &c., establishing a river police, appropriating mo-
ney for the improvement of the channel of the river, pur-
chase of the lock at *Louisville*, &c.   Again.   Suppose a
law introduced into our state legislature, entitled "an act
for the suppression of intemperance."   Now, what shall
be its provisions?   Who can imagine?   There is a section
to fine, disfranchise, &c., the drinker.   It tends to the sup-
pression of intemperance.   Another, appropriating money
to establish a state police for hunting up and bringing to
punishment such as may drink, &c.   Another to pay a
corps of lecturers to traverse the state and set forth the
evils of drunkenness.   And a member who, perhaps, has
some personal end to accomplish, proposes to add a section
that drinking a glass of liquor shall be cause for a divorce.
These sections would tend, it might be asserted, to sup-
press intemperance, the object to be accomplished by the
law, and thus might the legislature go on till a bill should
be framed of sections upon subjects as incongruous, as lit-
tle looked for in the same bill, and as little indicated by
the title, as in any instance has ever happened, and liable
to all the objections which it was supposed the new con-
stitution would obviate.   But, on the other hand, if the
title indicated the means to be used, the subject to be em-
braced in the sections, as the punishment of drunkenness,
or the sale of liquor to improper persons, &c., it might con-
form to the requirement of the constitution.

Another object of this constitutional provision was to
promote codification, that is, the expression of the written
law of the state in clear, precise terms, distributed under

appropriate heads, or titles, and compactly embodied in volumes, whereby the law might be preserved more stable and free from contradictions, and a knowledge of it be more easily obtained. Perfect codification has been a *desideratum* with thinking men since before the days of *Justinian.* And though it may not be here accomplished, much may be done towards it, if the legislature and the Courts will observe the constitution in enacting and enforcing laws. Says Mr. *Dudley Field* of *New-York:* "If every branch of the law were codified, it would naturally be arranged in five different parts or codes; that is to say, a political code, embracing all the laws relating to government and official relations; a code of civil procedure, or remedies in civil cases; a code of criminal procedure, or remedies in criminal cases; a code of private rights and obligations; and a code of crimes and punishments. The first three are already prepared. The political code corresponds generally with the first part of the revised statutes. Of the codes of civil and criminal procedure, it does not become me to speak, further than to say, that they contain the whole body of remedial law. All that remains, then, to be prepared are, what the civilians call a civil code, or code of private rights and duties; and a penal code, or code of crimes and punishments. The latter is on the point of being established in *England,* and will of course be imitated here. It is in regard to a civil code that the question is most open."

*Napoleon's* code arranged the laws of *France* in five subcodes, but with a somewhat different classification from the above. It is not our business, however, to here point out the proper divisions of a general code. It is not necessary to the decision of this case. Our constitution has indicated some general divisions which suffice for the present occasion, and the legislature has, to some extent, acted under it. It declares that the criminal code shall be founded, &c. The statutes, then, by our constitution, should have a separate division or head under which the criminal law should be found; and any provision for the punishment criminally of an offence in the civil portion of

the code, would be misplaced,—would unite sections upon two subjects. And as obstructing a highway is an offence at common law, a proceeding to punish it criminally should be placed in the criminal code. As well might the crimes of murder, &c., be placed in the act for the election of prosecuting attorneys, as that of obstructing a highway in an act for the election of supervisors.

By another section of the constitution, viz., 20 of art. 7, provision is made for a commission to prepare a code of " pleading and practice"—thus indicating another subdivision of a general code; and to secure intact the division of pleading and practice, after it might be formed, a prohibition was incorporated upon any special legislation on the subject. With a similar view, special legislation was inhibited upon the subject of the jurisdiction of justices of the peace. And, further, by section 20, above cited, the legislature is authorized to cause to be prepared a " systematic code" of the general laws of the state.

Were the suit by the supervisor, therefore, for the recovery of penalties, to be regarded as substantially a criminal prosecution, we should hold the section on which it is founded improperly placed; but as it is, in the opinion of a majority of the Court, not to be so regarded, but simply a civil suit, and no bar to a criminal prosecution; Levy v. The State, 6 Ind. R. 281; it is the judgment of the Court, with a doubt on this point on the part of the writer of this opinion, that it is not so clearly misplaced as to render it void.

Where the penalty shall go—to what use it must be applied under the constitution—is not a question necessarily involved in this suit. It may be raised in a subsequent proceeding. It would, however, seem that as this is a civil suit, the constitution would not particularly apply to it. On the weight of evidence and the instructions to the jury, we cannot reverse the judgment; nor can we on the question of jurisdiction, as the complaint closes with an allegation that the plaintiff claims but 100 dollars, though in the body of the complaint a larger cause of action is stated.

May Term,
1856.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*H. C. Newcomb*, *J. S. Harvey* and *J. S. Newman*, for the appellants.

*T. D.* and *R. L. Walpole*, for the appellees.