## VOIGHT *v.* WRIGHT.

ERROR TO THE CORPORATION COURT OF THE CITY OF NORFOLK,
STATE OF VIRGINIA.

No. 92. Submitted November 26, 1890. — Decided May 25, 1891.

The act of Virginia of March, 1867, (now repealed,) as set forth in c. 86,
Code of Virginia, ed. 1873, providing that all flour brought into the State
and offered for sale therein shall be reviewed, and have the Virginia in-
spection marked thereon, and imposing a penalty for offering such flour
for sale without such review or inspection, is repugnant to the commerce
clause of the Constitution, because it is a discriminating law, requiring
the inspection of flour brought from other States when it is not required
for flour manufactured in Virginia.

THE case is stated in the opinion.

*Mr. James E. Heath* for plaintiffs in error.

No appearance for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action brought in 1886, in a justice's court in Norfolk, State of Virginia, by Wright, the defendant in error, against the plaintiffs in error, R. P. Voight & Co., to recover fifteen dollars for fees alleged to be due to the plaintiff for inspection of flour. Judgment was rendered for the plaintiff, and an appeal taken to the corporation court of the city of Norfolk, by which court the judgment was affirmed. This being the highest court of the State in which a decision in the suit could be had, a writ of error to the same was sued out of this court, and the case is now here for review. the question in the case has respect to the constitutionality of a law of Virginia, passed in March, 1867, by which it was declared as follows: (1) "All flour brought into this State and offered for sale therein shall be reviewed, and have the Virginia inspection marked thereon. (2) Any person or persons selling or offering to sell such flour without review or inspection, as provided in the preceding section, shall be fined the sum of five dollars, for the use of the commonwealth, for each barrel so sold or offered for sale." This law was afterwards carried into the code of 1873, constituting the 10th and 11th sections of the 86th chapter of the said code. The laws also gave to the inspector a fee of two cents for each barrel inspected. There was no law requiring flour manufactured in Virginia to be thus inspected as a condition of selling it or offering it for sale, though by the inspection laws of the State manufacturers of flour might have their flour so inspected if they saw fit. It may be proper to add that the law in question is now repealed.

On the trial of the cause in the corporation court the following bill of exceptions was taken, to wit:

"Be it remembered that upon the trial of this cause the following statement of facts was agreed between the parties, to

wit: The following facts are agreed in this case to have the same force and effect as if regularly proved by competent proof:

"1st. The plaintiff is the flour inspector for the city of Norfolk, duly appointed and commissioned as such.

"2d. The defendants are wholesale grocery merchants, conducting their business in the said city.

"3d. The bill of the plaintiff is for the inspection of 750 barrels of flour belonging to the defendants, and brought into this State from other States, and inspected as required by c. 86 of the Code of Virginia, edition 1873, before the same was sold or offered for sale and after the same was placed in his storehouse.

"And, to maintain the issue on his part, the plaintiff and appellee, E. T. Wright, read the sections of the statute of Virginia, as set forth in chapter 86 of the Code of Virginia, edition of 1873, in relation to the inspection of flour brought into this State from sister States, and, to maintain the issue on their part, the appellants and defendants, R. P. Voight & Co., read from the commercial clause of the Constitution of the United States, viz., art. I, sec. 8th, clauses 1 and 3, and section 10, clause 2, and art. IV, sec. 2, clause 1, and insisted that the said sections of said statute of the State of Virginia are in conflict with the Constitution of the United States; but the court overruled the objections of the said R. P. Voight & Co., and expressed the opinion that the said statute of the State of Virginia is not in conflict with the said Constitution of the United States, and thereupon gave judgment for the plaintiff; and to this opinion of the court the defendants, R. P. Voight & Co., by their counsel, except and pray that this bill of exceptions may be signed, sealed and made a part of the record in this case, which is accordingly done.

"D. TUCKER BROOKE, [SEAL]

"*Judge Corporation Court of the City of Norfolk, Va.*"

The State of Virginia has had a system of inspection laws from an early period; but they have related to articles produced in the State, and the main purpose of the inspection.

required has been to prepare the articles for exportation, in order to preserve the credit of the exports of the State in foreign markets, as well as to certify their genuineness and purity for the benefit of purchasers generally. Chief Justice Marshall, in *Gibbons* v. *Ogden*, said: "The object of inspection laws is to improve the quality of articles produced by the labor of a country ; to fit them for exportation, or it may be, for domestic use." 9 Wheat. 1, 203. In *Brown* v. *Maryland*, speaking of the time when inspection is made, he adds: "Inspection laws, so far as they act upon articles for exportation, are generally executed on land before the article is put on board the vessel; so far as they act upon importations, they are generally executed upon articles which are landed. The tax or duty of inspection, then, is a tax which is frequently, if not always, paid for service performed on land." 12 Wheat. 419, 438. Whilst, from the remark of the Chief Justice, last cited, it would appear that inspection may be made of imported goods, as well as goods intended for export, yet in what manner and to what extent this may be done without coming in collision with the power of Congress to regulate foreign and interstate commerce, may be somewhat difficult to explain with precision. In the case of *People* v. *Compagnie Générale Transatlantique*, 107 U. S. 59, it was held by this court that a law of the State of New York imposing a tax upon alien passengers coming by vessel from a foreign country to the port of New York is a regulation of foreign commerce, and void, although it was declared by the title of the law to be "An act to raise money for the execution of the inspection laws of the State;" which laws authorized passengers to be inspected in order to determine who were criminals, paupers, lunatics, orphans or infirm persons, without means or capacity to support themselves, and subject to become a public charge. It is true that the law was held not to be an inspection law, because such laws have reference only to personal property, and not to persons. But the question is still open as to the mode and extent in which state inspection laws can constitutionally be applied to personal property imported from abroad, or from another State, — whether such laws can go beyond the identi-

fication and regulation of such things as are directly injurious to the health and lives of the people, and therefore not entitled to the protection of the commercial power of the government, as explained and distinguished in the case of *Crutcher* v. *Kentucky, ante,* 47, just decided.

It may be remarked, in passing, that in the notes to *Turner* v. *Maryland,* 107 U. S. 38, 51, 53, prepared by Mr. Justice Blatchford, in which is contained a list of the various inspection laws of the different States, we do not observe any laws which seem to provide for the inspection of articles other than those which are the produce of the State, and this generally with a view to preparing them for exportation.

But, be this as it may, and without attempting to lay down any specific proposition on this somewhat difficult subject, there is enough in the case before us to decide it on satisfactory grounds, without passing upon the general right of the State to inspect imports or the qualifications to which it must necessarily be subject. The law in question is a discriminating law, and requires the inspection of flour brought from other States, when such inspection is not required for flour manufactured in Virginia. This aspect of the case brings it directly within the principle of *Brimmer* v. *Rebman,* 138 U. S. 78, decided at the present term. The law in question in that case was another statute of Virginia, making it unlawful to sell within the State any fresh meats (beef, veal or mutton) slaughtered one hundred miles, or over, from the place at which it might be offered for sale, until it had been inspected and approved as provided in the act. Mr. Justice Harlan, delivering the opinion of the court in that case, said: " Undoubtedly, a State may establish regulations for the protection of its people against the sale of unwholesome meats, provided such regulations do not conflict with the powers conferred by the Constitution upon Congress, or infringe rights granted or secured by that instrument. But it may not, under the guise of exerting its police powers, or of enacting inspection laws, make discriminations against the products and industries of some of the States in favor of the products and industries of its own or of other States. The owner of the meats here

in question, although they were from animals slaughtered in Illinois, had the right, under the Constitution, to compete in the markets of Virginia upon terms of equality with the owners of like meats, from animals slaughtered in Virginia or elsewhere within one hundred miles from the place of sale. Any local regulation which in terms or by its necessary operation denies this equality in the markets of a State is, when applied to the people and products or industries of other States, a direct burden upon commerce among the States, and, therefore, void. *Welton* v. *Missouri*, 91 U. S. 275, 281; *Railroad Co.* v. *Husen*, 95 U. S. 465; *Minnesota* v. *Barber*, 136 U. S. 313, 319." The case of *Brimmer* v. *Rebman* was decided in accordance with these views, the law in question being held to be unconstitutional and void. The decision in that case is so directly apposite to the present that it is unnecessary to prolong the discussion, or to cite further authorities.

The judgment of the Corporation Court of the city of Norfolk is

*Reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE BROWN, not having been a member of the court when this case was argued, took no part in the decision.