(10 Misc. Rep. 65.)

### PEOPLE v. HAWKINS.

(Court of Oyer and Terminer, Delaware County. October, 1894.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—CONVICT-MADE GOODS.
    Laws 1894, c. 698, requiring convict-made goods to be labeled as such when exposed for sale, is unconstitutional as depriving persons of property, etc., without due process of law, since it applies to goods purchased before its enactment.

2. SAME—INTERSTATE COMMERCE.
    Laws 1894, c. 698, requiring goods made by convict labor in another state to be labeled as such 'when exposed for sale in New York, is repugnant to the interstate commerce clause of the federal constitution.

Indictment against Samuel K. Hawkins for the violation of Laws 1894, c. 698, requiring convict-made goods to be labeled on being exposed for sale. Defendant demurs to the indictment. Sustained.

W. F. White, Dist. Atty., for the People.
Reynolds, Stanchfield & Collin, for defendant.

SMITH, J. This defendant was indicted by a grand jury of Delaware county for a violation of chapter 698 of the Laws of 1894. That statute provides, in substance, as follows:

"Section 1. All goods, wares and merchandise made by convict labor in any penitentiary, prison, reformatory or other establishment in which convict labor is employed in any state, .except the state of New York * * * shall before being exposed for sale be branded, labeled or marked as hereinafter provided, and shall not be exposed for sale in any place within this state without such brand, label or mark.

"Sec. 2. The brand, label or mark hereby required shall contain at the head or top thereof the words 'Convict made,' followed by the year and name of the penitentiary, prison, reformatory or other establishment in which it was made, in plain English lettering, of the style and size known as great primer roman condensed capitals. The brand or mark shall, in all cases where the nature of the article will permit, be placed upon the same, and only where such branding or marking is impossible shall a label be used, and where a

label is used it shall be in the form of a paper tag, which shall be attached by wire to each article where the nature of the article will permit, and placed securely upon the box, crate or other covering in which such 'goods, wares or merchandise may be packed, shipped or exposed for sale. Said brand, mark or label shall be placed upon the outside of and upon the most conspicuous part of the finished article and its box, crate or covering."

"Sec. 5. Section three hundred and eighty-four-b of the Penal Code is hereby amended; to read as follows:

"Sec. 384b. Penalty for dealing in convict-made goods of other states without labeling. A person having in his possession for the purpose of sale, or offering for sale, any convict-made goods, wares or merchandise, manufactured in any other state, without the brand, mark or label required by law, or who removes or defaces such brand, mark or label, is guilty of a misdemeanor, punishable by a fine not exceeding ten hundred dollars, nor less than one hundred dollars, or imprisonment for a term not exceeding one year nor less than ten days, or both."

The defendant has demurred to this indictment as not alleging facts sufficient to constitute a crime. The contention made upon the argument of the demurrer is that the act is unconstitutional, and therefore void. This contention is based upon two grounds: (1) That inasmuch as the act operates upon the property owned at the time it took effect, as well as upon property thereafter owned, it constitutes an unlawful interference with vested rights. (2) That the act makes such a discrimination between goods manufactured in foreign states and those manufactured in New York state as is repugnant to that clause in the United States constitution which places the control of interstate commerce in the hands of congress alone.

Upon the first ground of contention it hardly seems to admit of controversy that the effect of the act is to restrict the sale of the articles specified. That restriction is not trifling or incidental, but is material, and is evidently the object which the statute seeks to accomplish. In Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, it is held:

"Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment that materially affect its value, without legal process or compensation, it deprives him of his property within the meaning of the constitution; and, although the police and other powers of government may sometimes incidentally affect property rights, these powers can only be exercised to promote the public good, and are always subject to judicial scrutiny."

The brand required to be stamped conspicuously upon the goods is such a brand as would bring the dealer who should traffic in them into obloquy with all the laboring classes of the state. Of necessity, then, it would restrict the sale, and would operate as a practical exclusion of such goods from the market. Such a restriction of sale would seem to be, within the principle of the case cited, the deprivation of the owner of such goods of his property without process of law and without compensation. Whether the police power of a state could lawfully be exercised to thus impair the value of property acquired after the act takes effect, it is not necessary here to determine. The effect of the act is not limited to property subsequently acquired. It affects as well property which was owned at the time that the act took effect. As to such property, it is clearly

an invasion of vested rights.   In Wynehamer v. People, 13 N. Y. 378, it was held:

"(1) That the provisions of the act to prevent intemperance (Laws 1855, p. 340) substantially destroy the property in intoxicating liquors owned and possessed by persons within the state when the act took effect. (2) In its application to such liquors so owned and possessed, the act violates the provision of the state constitution which declares that no person shall be deprived of life, liberty, or property without due process of law. (3) But as no discrimination is made by its provisions between liquor owned when it took effect and that which might afterwards be manufactured or imported, and they are made operative on both, the act is unconstitutional and void."

I am unable to distinguish the case under consideration from the case there decided.   It is true that the destruction of property may not be so effectual under the act of 1894 as under the act there under consideration; but the principle is the same, and, inasmuch as vested rights which existed at the time when the act went into effect are not saved from the operation of the act, within that decision the act is void, both as to property then owned and as to that subsequently acquired.

But the defendant's second ground of contention appears to be supported by authority.   In Welton v. State of Missouri, 91 U. S. 275, it is held:

"(1) A license tax required for the sale of goods is in effect a tax upon the goods themselves. (2) A statute of Missouri which requires the payment of a license tax from persons who deal in the sale of goods, wares, and merchandise which are not the growth, produce, or manufacture of the state, by going from place to place to sell them in the state, and requires no such license tax from the persons selling in a similar way goods which are the growth, produce, or manufacture of the state, is in conflict with the power vested in congress to regulate commerce with foreign nations and among the several states. (3) That power was vested in congress to insure uniformity of commercial regulation against discriminating state legislation. It covers property which is transported as an article of commerce from foreign countries, or among the states, from hostile or interfering state legislation until it has mingled with and become a part of the general property of the country, and protects it, even after it has entered a state, from any burdens imposed by reason of its foreign origin. (4) The nonexercise by congress of its power to regulate commerce among the several states is equivalent to a declaration by that body that such commerce shall be free from any restrictions."

In Webber v. Virginia, 103 U. S. 344, a statute of Virginia required that an agent for the sale of articles manufactured in other states must first obtain a license, for which he was required to pay a specific tax, for each county in which he sells, or offers to sell, them, while an agent for the sale of articles manufactured in that state, if acting for the manufacturer, was not required to obtain a license or pay any license tax.   Held, that the statute is in conflict with the commerce clause of the constitution of the United States, and void.   Further held, that commerce among the states is not free whenever a commodity is, by reason of its foreign growth or manufacture, subjected by state legislation to discriminating regulations or burdens.

In Voight v. Wright, 141 U. S. 62, 11 Sup. Ct. 855, it was held:

"That an act of Virginia of March, 1867, * * * providing that all flour brought into the state, and offered for sale therein, shall be reviewed, and have

the Virginia inspection marked thereon, and imposing a penalty for offering such flour for sale without such review or inspection, is repugnant to the commerce clause of the constitution, because it is a discriminating law, requiring the inspection of flour brought from other states when it is not required for flour manufactured in Virginia."

It is not necessary to cite further authorities to the proposition that a state has not the right to impose upon property of foreign manufacture a burden which is not imposed upon property manufactured within the state. If I am right in the conclusion that the brand required by the act in question to be stamped upon property of foreign manufacture constitutes such a burden, it follows, then, that the statute in question is void as repugnant to the commerce clause of the United States constitution.

I have examined with great care the able brief of the counsel for the people in this case, but I can find no authority cited therein which in any way conflicts with well-regulated rules of law which must govern the interpretation of this statute. Under those rules the statute must be adjudged to be an invalid exercise of legislative power, and its infraction constitutes no crime. The demurrer must therefore be sustained. Demurrer sustained.