In re SCHEITLIN.

(Circuit Court, E. D. Missouri, E. D. January 9, 1900.)

No. 4,251.

INTERSTATE COMMERCE—STATE REGULATIONS—OLEOMARGARINE LAW OF MISSOURI.

The provision of the oleomargarine law of Missouri (Sess. Acts 1895, p. 26, § 2) prohibiting the manufacture or sale within the state of any substance "in imitation or semblance of natural butter," or with which any substance has been combined "for the purpose or with the effect of imparting thereto a yellow color, or any shade of yellow, so that such substitute shall resemble yellow or any shade of genuine yellow butter," is a proper regulation for the prevention of fraud and deception, which is within the police power of the state, and its enforcement as to oleomargarine brought from other states, and sold in the original packages, is

not a violation of any rights secured by the interstate commerce clause of the constitution of the United States.

This was an application by Charles Scheitlin for a writ of habeas corpus.

Thomas B. Harvey, for relator.

Taylor & Erd, for respondent.

ADAMS, District Judge. This case is submitted on the petition for the writ of habeas corpus and the return thereto. It appears that the Capital City Dairy Company, a corporation of Ohio, is engaged in the manufacture and sale of oleomargarine; that the relator is its agent engaged in selling in St. Louis, Mo., the product of his principal in original unbroken packages only; that on the 2d day of December, 1899, an information was duly filed in the St. Louis court of criminal correction charging the relator with unlawfully selling and offering for sale oleomargarine which then and there resembled yellow, or a shade of genuine yellow, butter, contrary to the form of statute in such case made and provided; that upon this information the relator was arrested, found guilty, and adjudged to pay a fine of $50, and for the nonpayment of which he was, by an order of court, committed to the custody of the sheriff for imprisonment. The petition for the writ of habeas corpus charges that the law of Missouri under which the prosecution of relator was had, in so far as it attempts to prohibit the sale in this state of oleomargarine in original packages, when brought here from another state in which it is manufactured, is repugnant to section 8 of article 1 of the constitution of the United States, which confers upon congress power to regulate commerce among the several states. Section 2 of the act of Missouri approved April 19, 1895 (Sess. Acts 1895, p. 26), provides as follows:

"No person shall by himself, his agents or employees, produce or manufacture any substance in imitation or semblance of natural butter, nor sell nor keep for sale, nor offer for sale any imitation butter made or manufactured, compounded or produced in violation of this section, whether such imitation butter shall be made or produced in this state or elsewhere."

This section elsewhere provides:

"That no person shall combine any animal fat, or vegetable oil, or other substance with butter, or combine therewith or with animal fat or vegetable oil, or combination of the two, or with either one, any other substance or substances whatever, any annatto or compound of the same, or any other substance or substances, for the purpose or with the effect of imparting thereto a yellow color, or any shade of yellow so that such substitute shall resemble yellow or any shade of genuine yellow butter."

There is no claim that there is any want of evidence of illegality in the proceedings which resulted in the imprisonment of the relator, other than that the law itself under which the conviction was had is unconstitutional, being violative of the commerce clause of the constitution, in this: that it—the act of Missouri—prohibits the sale of imported oleomargarine in the original package if the same "resembles yellow or any shade of genuine yellow butter." This contention raises the question whether the act of Missouri in ques-

tion constitutes an unlawful interference with interstate commerce, or whether, on the other hand, it constitutes a fair and lawful exercise of the police power of the state. I am relieved from the necessity of giving this question an original, independent consideration for the reason that the same has been heretofore exhaustively considered by the supreme court of the United States in a variety of decisions, from which, it seems to me, a rule of conduct for trial judges is clearly laid down and established. In the case of Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223, the supreme court had occasion to consider a statute of the commonwealth of Massachusetts very similar to that of Missouri now under consideration. The Massachusetts act made it unlawful for any person to sell any article, product, or compound made wholly or partly out of any fat, oil, or oleaginous substance, or compound thereof, not produced from unadulterated milk or cream of the same, "which shall be in imitation of yellow butter produced from pure unadulterated milk or cream of the same." That act was assailed as unconstitutional for the same reasons as the Missouri act is now challenged. After a careful consideration of the prior adjudicated cases bearing upon the exercise of the police power of a state as affected by the commerce clause of the constitution, the supreme court in that case concluded its opinion as follows:

"It has, therefore, been adjudged that the states may legislate to prevent the spread of crime, and may exclude from their limits paupers, convicts, persons likely to become a public charge, and persons afflicted with contagious or infectious diseases. These and other like things having immediate connection with the health, morals, and safety of the people may be done by the states in the exercise of the right of self-defense. And yet it is supposed that the owners of a compound which has been put in a condition to cheat the public into believing that it is a particular article of food in daily use, and eagerly sought by the people in every condition of life, are protected by the constitution in making a sale of it against the will of the state in which it is offered for sale, because of the circumstances that it is an original package, and has become a subject of ordinary traffic. We are unwilling to accept this view. We are of opinion that it is within the power of a state to exclude from its markets any compound manufactured in another state which has been artificially colored or adulterated so as to cause it to look like an article of food in general use, and the sale of which may, by reason of such coloration or adulteration, cheat the general public into purchasing that which they may not intend to buy. The constitution of the United States does not secure to any one the privilege of defrauding the public. The deception against which the statute of Massachusetts is aimed is an offense against society, and the states are as competent to protect their people against such offenses or wrongs as they are to protect them against crimes or wrongs of more serious character; and this protection may be given without violating any right secured by the national constitution, and without infringing the authority of the general government. A state enactment forbidding the sale of deceitful imitations of articles of food in general use among the people does not abridge any privilege secured to citizens of the United States, nor in any just sense interfere with the freedom of commerce among the several states. It is legislation which can be most advantageously exercised by the states themselves."

I need not further comment upon or quote from this decision of the supreme court. It is conceded by counsel to be controlling authority in the case now under consideration, unless the same has been overruled by a later decision of that court. It is contended

that the supreme court, in the case of Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49, has practically overruled the doctrine of the Plumley Case, and it is to this contention that I have given very careful consideration; especially so in the light of the fact that the circuit court for the district of Minnesota in the case In re Brundage (C. C.) 96 Fed. 963, has reached a different conclusion than that to which I am irresistibly brought. In approaching a consideration of the Schollenberger Case, it is well to distinctly understand the question there involved. The act of Pennsylvania under which a conviction was had in that case is as follows:

"No person, firm or corporate body shall manufacture out of any oleaginous substance, or any compound of the same other than that produced from unadulterated milk or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk or cream from the same, or of any imitation or adulterated butter or cheese, nor shall sell or offer for sale or have in his, her or their possession with intent to sell the same as an article of food."

It is observed at the outset that the law of Pennsylvania absolutely prohibits the sale of oleomargarine within the confines of the state. The law of Massachusetts under which the Plumley Case arose does not prohibit the sale of oleomargarine, but only prohibits its sale when made in imitation of yellow butter; in other words, prohibits the coloring of oleomargarine so as to resemble yellow butter, practically the same as the statute of Missouri now under consideration. The supreme court, in its opinion in the Schollenberger Case, analyzes the Plumley Case, and distinguishes it from the Schollenberger Case; saying as follows:

"The statute in that case [Plumley v. Massachusetts] prevented the sale of this substance in imitation of yellow butter. * * * This court held that a conviction under that statute for having sold an article known as 'oleomargarine,' not produced from unadulterated milk or cream, but manufactured in imitation of yellow butter produced from pure unadulterated milk or cream, was valid. Attention was called in the opinion to the fact that the statute did not prohibit the manufacture or sale of all oleomargarine, but only such as was colored in imitation of yellow butter produced from unadulterated milk, or cream of such milk. If free from coloration or ingredient that caused it to look like butter, the right to sell it in a separate and distinct form, and in such manner as would advise the consumer of the real character, was neither restricted nor prohibited. The court held that under the statute the party was only forbidden to practice, in such matters, a fraud upon the general public; that the statute seeks to suppress false pretenses and to promote fair dealing in the sale of an article of food, and that it compels the sale of oleomargarine for what it really is by preventing its sale for what it is not; that the term 'commerce among the states' did not mean a recognition of a right to practice a fraud upon the public in the sale of an article even if it had become the subject of trade in different parts of the country. It was said that the constitution of the United States did not take from the states the power of preventing deception and fraud in the sale within their respective limits of articles, in whatever state manufactured, and that that instrument did not secure to any one the privilege of committing a wrong against society. It will thus be seen that the case was based entirely upon the theory of the right of a state to prevent deception and fraud in the sale of any article, and that it was the fraud and deception contained in selling the article for what it was not, and in selling it so that it should appear to be another and a different article, that this right of the state was upheld. The question of the right to totally prohibit the introduction from another state of the pure article did not arise, and, of course, was not passed upon."

In so distinguishing between the Plumley Case and the Schollenberger Case, the court concludes that the act of Pennsylvania is violative of the commerce clause of the constitution in that it entirely prohibited the sale of oleomargarine within the confines of the state, even when the same was manufactured in another state and shipped into the state in the original package, for sale within the state in such original package. It is true the supreme court in the Schollenberger Case declared that pure oleomargarine was an article of commerce within the meaning of the commerce clause of the constitution, but I cannot bring myself to the conclusion, as contended by the relator in this case, that the supreme court in that case decided that, because oleomargarine was the subject of commerce between the states, therefore no restrictions or limitations upon its sale within a state can be made by the legislature of that state, provided only the article be pure, wholesome, and unadulterated of its kind. I believe the doctrine of the Plumley Case is and ought to remain in force, and that, notwithstanding oleomargarine is a subject of commerce between the states, any state has the undoubted right to so legislate with respect to it, in the exercise of its police power, as to prevent imposition, fraud, and deception upon the public; and this is what the act of the state of Missouri, now under consideration, alone attempts to do. It simply singles out one color, and enacts that that color, because of the likelihood that its use would deceive the unwary into purchasing what they do not desire, shall be prohibited. It leaves the range of all the other colors open to the manufacturer and distributer, and can, therefore, not be said to be prohibitive in its character.

The foregoing are the conclusions which I have reached from a careful consideration of all the cases to which my attention has been called. They are nearly all of them referred to and considered in the Plumley and Schollenberger Cases, and I have, therefore, not deemed it profitable to take them up and give them a separate consideration. It results, from the foregoing views, that the relator's imprisonment is not unlawful, and that he must be remanded.