## STATE *vs.* OSCAR ROGERS.

### Androscoggin. Opinion February 26, 1901.

*Constitutional Law. Police Power. Oleomargarine. Evidence. U. S. Const.*
*Art. 1, cl. 3, § 3; Const. of Maine, Art. 4, cl. 3, § 1. R. S., c. 128, § 3.*
*Stats. 1885, c. 297; 1895, c. 143.*

Upon an indictment against the defendant for selling a quantity of "a certain substance made in imitation of yellow butter, and not made exclusively or wholly of cream or milk," *held;* that the statute upon which the indictment was based does not assume to impose an absolute prohibition on the manufacture or sale of "oleomargarine" or "butterine" in its avowed character as such. It does not seek to interfere with any inherent right or privilege the people may have to engage in the manufacture and sale of any wholesome product or compound designed simply to be used as a substitute for butter, provided it is not made in imitation of yellow butter, and the true character of it is openly designated. It prohibits the sale of a simulated article put upon the market in such form and color as to be calculated to deceive the purchaser.

Where the resemblance between the external appearance of yellow butter and the counterfeit product is so close that it is not practicable by any ordinary inspection for the purchaser to distinguish the one from the other, and the only effective means of protecting the public against the deception are to be found in the entire exclusion of such imitations from the market, the enactment of such a prohibitory statute as the one in question for the prevention of fraud and the promotion of a sound public policy, may well be deemed a reasonable exercise by the legislature of the police powers of the state and not in conflict with any provision of our state constitution.

Nor is it repugnant to the interstate commerce clause of the federal constitution. It is within the power of a state to exclude from its markets any compound manufactured in another state which has been artificially colored or adulterated and the sale of which may cheat the general public into purchasing that which they may not intend to buy. The constitution of the United

States does not secure to any one the privilege of defrauding the public. Such a statute does not abridge any privilege secured to citizens of the United States, nor, in any just sense, interfere with the freedom of commerce among the several states. It is legislation which can be most advantageously exercised by the states themselves.

It is not incumbent on the government to show knowledge on the part of the defendant that the compound sold by him is "not made exclusively of milk or cream," or to prove an intention on his part to deceive the purchaser. By the plain and simple terms of the statute the act of selling such an imitation of yellow butter as therein described is made to constitute the offense. It contains no words indicative of a legislative purpose to make such knowledge or intention an essential element of the offense.

On exceptions by defendant.　　Overruled.

Indictment for selling oleomargarine.　　The jury returned a verdict of guilty.　　The defendant moved in arrest of judgment, which being overruled, he took exceptions.　　The court was requested by the defendant to charge the jury :

(1.)　　That the statute, under which this indictment was brought, is unconstitutional and void.

(2.)　　That, if from the evidence in the case, the jury shall find that the respondent did have oleomargarine in his store and did sell to one Bailey a pound of the same, but that it was so like butter made exclusively from milk or cream, that when he purchased it, or when it came into his possession, and when he sold it, it could not even by an experienced eye have been distinguished from butter made exclusively from milk or cream, and he sold the same, never having known that it was in fact a substance not made exclusively from milk or cream, or that it was oleomargarine, not having any intention to violate the statute, the respondent must be discharged.

(3.)　　That the state must prove an intention on the part of the respondent in this case to deceive the purchaser, by selling him for pure butter made exclusively from milk or cream, that which resembled or imitated pure butter made as aforesaid, but which was in fact oleomargarine.

All of which instructions, so requested, the justice presiding refused to give to the jury, and the defendant excepted.

*Geo. E. McCann,* county attorney, for State.

It is for the legislature to judge what reasonable laws ought to be enacted to protect the people against this fraud, and to adapt the protection to the nature of the case. It has seen fit to require that every man who sells yellow butter shall take the risk of selling a pure article.

"It is competent for the legislature to regulate the sale of an article, of which the use would be detrimental to. the morals of the people." *State* v. *Gurney,* 37 Maine, 156 ; *Preston* v. *Drew,* 33 Maine, 558.

This class of legislation has rested and been vindicated, partly upon the ground of promoting the health of the community, but more especially on the ground of protecting the public from fraud. In many states, statutes prohibiting the sale of oleomargarine made in imitation of yellow butter have been upheld by the courts. *State* v. *Marshall,* 64 N. H. 549 ; *Com.* v. *Huntley,* 156 Mass. 236, and cases cited.

Knowledge or criminal intent need not be alleged nor proved. 3 Greenl. Ev. 15th Ed. § 21 ; *State* v. *Skolfield,* 86 Maine, 149.

*E. M. Briggs,* for defendant.

If the law should be held unconstitutional as to its prohibition of the sale of imitation butter in the original package that was imported from another State or foreign country, then it is unconstitutional altogether. It cannot be held unconstitutional as to the sale of oleomargarine or imitation butter coming from one place, sold in the original package, and constitutional as to the sale of it after the original package had been broken. If the law had exempted from its prohibition imitation butter that was imported and sold in the original package, it might be so held. The statute as a whole, either is or is not constitutional. It can not be both. *Leisy* v. *Hardin,* 135 U. S. p. 137. Decisions in other states are based on different statutes.

Counsel cited : *People* v. *Max,* 99 N. Y. 377 ; *Matter of Jacobs,* 98 N. Y. p. 98 ; *Com.* v. *Huntley,* Knowlton, J., dissenting, 156 Mass. 236.

Considering the fact that Congress has said in unmistakeable terms that oleomargarine is an article of commerce by making it a subject of interval revenue tax; considering the very slight danger of anybody being deceived into buying this substance for something better than what it purports to be, on account of the very strict regulations against deception being placed around it by the government under its revenue regulations; considering that the law is invoked and is being enforced for an object entirely different from what it specifies the same to be by a class of people who color the products of their own cows with the same coloring matter as manufacturers of oleomargarine color their product; considering that oleomargarine chemically speaking is composed of the same fats as butter,—the stronger reasoning is to the effect that the legislature when it passed this law was not justified in doing so, but overstepped its police power and infringed on the constitution of the United States. See: *State* v. *Swett*, 87 Maine, 110; dissenting opinion of Justice Field, in *Powell* v. *Penn.*, 127 U. S. 257; *Watertown* v. *Mayo*, 109 Mass. 315–319; . dictum laid down by Chief Justice Fuller in *Wilkerson* v. *Rahrer*, 140 U. S. p. 575; *McGregor v. Cone*, 104 Iowa, 465, Am. St. Rep. 65–522.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

WHITEHOUSE, J. This was an indictment against the defendant for selling a quantity "of a certain substance made in imitation of yellow butter, and not made exclusively and wholly of cream or milk, and then and there containing fats, oil and grease not produced from milk or cream." The indictment was based on section three, of chapter 128 of the revised statutes, entitled "Offenses against the Public Health, Safety and Policy," as amended by chapter 297 of the Laws of 1885 and chapter 143 of the Laws of 1895.

That part of the statute involved in a decision of this case is as follows: "Whoever by himself or his agent manufactures, sells, exposes for sale or has in his possession with intent to sell, or takes orders for the future delivery of an article, substance or compound

made in imitation of yellow butter or cheese, and not made exclusively or wholly of cream or milk, or containing any fats, oil or grease not produced from milk or cream, whether said article, substance or compound be named oleomargarine, butterine or otherwise named, forfeits for the first offense one hundred dollars, and for the second and each subsequent offense, two hundred dollars, to be recovered by indictment with costs, one-third to go to the complainant and the balance to the state."

The presiding judge instructed the jury, against the defendant's request for contrary rulings, that the statute was constitutional and valid; and that it was not incumbent on the government to show that the defendant had knowledge that the substance sold by him was oleomargarine or a substance "not made exclusively and wholly of milk or cream," or to prove that there was an intention on his part to deceive the purchaser by selling him, for pure butter, a substance which resembled butter but which in fact was not butter.

The jury returned a verdict of guilty and the case comes to this court on the defendant's exceptions to these instructions.

I.   The power of the judicial department of the government to prevent the enforcement of a legislative enactment, by declaring it unconstitutional and void, is attended with responsibilities so grave that its exercise is properly confined to statutes that are clearly and conclusively shown to be in conflict with the organic law. It is the duty of one department to presume that another has acted within its legitimate province until the contrary is made to appear by strong and convincing reasons.

Under the constitution of this state "the legislature shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State not repugnant to this constitution nor to that of the United States." Art. 4, Part 3, § 1.

It is important, in the first place, to observe the precise scope and purpose of the statute, the construction and validity of which are to be considered in this case. It will be noted that it does not

assume to impose an absolute prohibition on the manufacture or sale of "oleomargarine" or "butterine" in its avowed character as such. It does not seek to interfere with any inherent right or privilege the people may have to engage in the manufacture and sale of any wholesome product or compound designed simply to be used as a substitute for butter, provided it is not made in imitation of yellow butter, and the true character of it is openly designated and published. It only prohibits the manufacture and sale of "any substance or compound made in imitation of yellow butter," and not made "wholly of cream or milk." As stated by the court in *People* v. *Arensberg*, 105 N. Y. 130: "It is aimed at a designed and intentional imitation of dairy butter, in manufacturing the new product, and not at a resemblance in qualities inherent in the articles themselves and common to both." The statute prohibits the sale of a simulated article put upon the market in such form and color as to be calculated to deceive the purchaser. The obvious purpose of it was to prevent the fraud and deception practiced in selling for genuine yellow butter any spurious article or compound made in imitation of it. Where the resemblance between the external appearance of yellow butter and the counterfeit article is so close that it is not practicable by any ordinary inspection for the purchaser to distinguish the one from the other, and the only effective means of protecting the public against the deception are to be found in the absolute suppression of the business and the entire exclusion of such imitations from the market, the enactment of such a prohibitory statute as the one in question, for the prevention of fraud, the protection of public morals and the promotion of a sound public policy, may well be deemed a reasonable exercise by the legislature of the police powers of the state, and not in conflict with any provision of our state constitution.

Statutes in Massachusetts and New York of precisely the same scope and purpose as ours have been declared by the courts of last resort of those states not to be in conflict with any provision of their constitutions. *Commonwealth* v. *Huntley*, (and *Plumley's case*), 156 Mass. 236 ; *People* v. *Arensberg*, 105 N. Y. 123. See also *State* v. *Marshall*, 64 N. H. 549 ; *State* v. *Addington*, 77 Mo.

110; *State* v. *Newton*, 21 Vroom, 534; *Powell* v. *Pennsylvania*, 127 U. S. 678.

Indeed, the judicial utterances have been so nearly uniform in upholding the validity of all such statutes for the protection of the people against deception, that it is conceded by the counsel for the defendant in the case at bar that, if our statute could be construed to apply only to products manufactured in the state, it should be held a valid police regulation.

But it is contended that, inasmuch as the statute was manifestly intended to prohibit the sale of all such products although imported from other states and sold in the original packages, it must be held inoperative and void as repugnant to that clause of the federal constitution conferring upon congress the power "to regulate commerce with foreign nations and among the several states." (Art. 1, clause 3, § 8). But the relation of the statute to the federal constitution is not necessarily brought in question by the facts of this case, as there is no evidence that the substance sold by the defendant was imported from another state. But inasmuch as the statute would obviously be shorn of the principal part of its operation unless it effectually prohibits the sale of such counterfeit products imported from another state and sold in the original package, as well as those manufactured in this state, and as both counsel have requested that the question should be considered and determined in this case, the court may properly state that in *Plumley* v. *Massachusetts*, 155 U. S., 461, the decision of the Supreme Court of Massachusetts ( *Com.* v. *Huntley* and *Plumley's case*, 156 Mass. supra) holding that the statute of that state of the same effect as ours, was not repugnant to the interstate commerce clause of the federal constitution, was distinctly affirmed in an elaborate opinion by the Supreme Court of the United States, six of the justices concurring in the majority opinion and three dissenting. In the majority opinion the court say: "We are of opinion that it is within the power of a state to exclude from its markets any compound manufactured in another state which has been artificially colored or adulterated so as to cause it to look like an article of food in general use, and the sale of which may, by reason of such

coloration or adulteration, cheat the general public into purchasing that which they may not intend to buy. The constitution of the United States does not secure to any one the privilege of defrauding the public. The deception against which the statute of Massachusetts is aimed is an offense against society, and the states are as competent to protect their people against such offenses or wrongs as they are to protect them against crimes or wrongs of more serious character. And this protection may be given without violating any right secured by the national constitution, and without infringing the authority of the general government. A state enactment forbidding the sale of deceitful imitations of articles of food in general use among the people does not abridge any privilege secured to citizens of the United States, nor, in any just sense, interfere with the freedom of commerce among the several states. It is legislation which 'can be most advantageously exercised by the states themselves.' "

II. The presiding justice also correctly instructed the jury that if the defendant "sold a compound in imitation of yellow butter, not made wholly and exclusively of cream or milk or containing any fats, oils or grease not produced from cream or milk, then he is guilty." It was not incumbent on the government to show knowledge on the part of the defendant that the "article, substance or compound" sold by him was "not made exclusively and wholly of milk or cream" or to prove an intention on his part to deceive the purchaser. By the plain and simple terms of the statute the act of selling such an imitation of yellow butter, as therein described, is made to constitute the offense. It contains no words indicative of a legislative purpose to make such knowledge or intention an essential element of the offense. The words "knowingly," "intentionally" or "with intent to deceive" are not found in the enactment.

Under statutes prohibiting the sale of intoxicating liquors it is uniformly held that knowledge on the part of the defendant of the intoxicating quality of the liquor is not an essential ingredient of the offense. In *Com.* v. *Boynton*, 2 Allen, 160, the court say:

"If the defendant purposely sold the liquor, which was in fact intoxicating, he was bound at his peril to ascertain the nature of the article which he sold. Where the act is expressly prohibited, without reference to the intent or purpose, and the party committing it was under no obligation to act in the premises, unless he could do so lawfully, if he violates the law he incurs the penalty." See also *Barnes* v. *State*, 19 Conn. 398; *State* v. *Hughes*, 16 R. I., 403. So as to conviction under statutes prohibiting the sale of adulterated milk or "milk to which water or any foreign substance has been added." The protection of the community against the extensive and skilful frauds practiced in the adulteration of articles of food is a matter of such general importance, and proof of the defendant's knowledge of the adulteration is in a majority of instances a matter of such extreme difficulty, that it is deemed reasonable as well as competent for the legislature to require the seller of such articles to take upon himself the responsibility of knowing that they are not adulterated. *Com.* v. *Farren*, 9 Allen, 489; *State* v. *Smith*, 10 R. I. 258. And "such is the general rule where acts which are not mala in se are made mala prohibita from motives of public policy, and not because of their moral turpitude or the criminal intent with which they are committed." *Com.* v. *Raymond*, 97 Mass., 567. As stated by PETERS, C. J., in *State* v. *Swett*, 87 Maine, 99: "The principle is applied only in minor offenses upon some ground of public policy for the protection of society against abuses which cannot be prevented under any more liberal rule."

In seeking to determine the proper construction to be given to the statute in question in the case at bar, it is necessary to consider the practical result of the interpretation contended for by the defendant. It would be obviously impossible in a great majority of cases to prove the defendant's knowledge that the substance sold by him was not made exclusively of milk or cream, and hence the requirement of such proof on the part of the state would necessarily defeat the effective operation of the statute, and destroy its usefulness. In view of the object manifestly sought to be accomplished and the mischief designed to be remedied by the enact-

ment, it is not reasonable to presume that the legislature intended at the same time to render the act futile and nugatory by making such knowledge on the part of the defendant an essential element of the offense.

*Exceptions overruled.*