**THE BEST FOODS, Inc., v. WELCH, Commissioner of Agriculture of Idaho, et al., and three other cases.**

District Court, D. Idaho, S. D. August 28, 1929.

Nos. 1488–1491.

Hawley & Hawley, of Boise, Idaho, for complainants.

W. D. Gillis, Atty. Gen., and Leon M. Fisk, Asst. Atty. Gen., for defendants.

Before DIETRICH, Circuit Judge, and NETERER and CAVANAH, District Judges, as a statutory three-judge court.

NETERER, District Judge (after stating the facts). ■ The court judicially knows that Idaho is 83,888 square miles in area, two-thirds of which is virgin timber. Much of the balance of the land is adapted to agricultural and pastoral pursuits. The cows, and the lands devoted in support of dairying, in the state are burdened with taxes for the maintenance of state and local governments, and this includes police protection to those engaged in the sale of oleomargarine, etc., to which they contribute nothing. If the intelligent, patriotic duty of the state legislators makes it advisable to encourage the development of its material resources, the products of its cows produced from the growth of its farms, bringing into cultivation additional acres of its wide expanse of fertile lands, and require dealers in the artificial manufacture of food products from foreign substances to contribute to the expense of the government, whose protection they receive and whose benefits they enjoy, and in effect discourage local dealers in the sale of manufactured oleomargarine products, "vegetable oils or fats having a caloric value slightly higher than butter," claimed by the plaintiff to be superior in food value to butter and dairy products, and which, it is claimed, can be produced at a cost of from 35 to 55 per cent. of the cost of butter, and more than a million pounds are sold in the state, and it is agreed "many people in the state * * * as a matter of preference or as a matter of economy * * * purchase oleomargarine instead of butter," by requiring the payment of a license fee and making periodical reports of their sales, the court should give critical consideration to incentive to industry within the state and whether the policy thus enacted is reasonably founded in "the purpose and pol-

icy of taxation," within the limitations of the Constitution to the well-being of the inhabitants of the state, many of whom are engaged in one of the basic, if not the basic industry of the state and nation, " * * * a constitution that has known protective tariffs for a hundred years." Justice Holmes in Alaska Fish, etc., Co. v. Smith, 255 U. S. 44, 41 S. Ct. 219, 220, 65 L. Ed. 489.

The reference to the invention, introduction into the United States, and development of oleomargarine, and the evolution of the cow from its earliest history, have no more place in concluding the legal rights in this case than the act of the employee who left his cheese "sandwich lunch" in a cave and forgot it for two weeks, which act gave birth to Roquefort cheese, or the discovery of the Arab that the shaking of the milk in the skin bottles on the camel's back produced little balls of fat, butter, have to the value or legal status of those commodities. Nor is it material that the Dairymen's Association and State Grange supported or inspired this legislative act.

Does the act of the Legislature violate the provisions of the Constitution of the United States by denying equal protection to the plaintiffs or depriving them of their property rights without due process of law, or interfere with the free movement of interstate commerce?

This court has no interest in the policy of the state revenue laws, so long as equal protection is not denied, and is reasonable and not purely arbitrary. Nor is the Fourteenth Amendment concerned with state legislation where there is a real difference and it will not create an artificial equality. Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 193, 56 L. Ed. 350. There is no equality between the cow on the farm and her natural product, "butter," and the manufacturing plant at San Francisco, Salt Lake, or elsewhere, and its artificial product, "Oleomargarine." Each product has food value, but composed of different elements, and the difference determines between them as food, and is a just basis for classification. "Any classification is permissible which has a reasonable relation to some permitted end of governmental action * * * if the classification is reasonably founded in 'the purposes and policy of taxation.'" Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 85, 67 L. Ed. 237; Watson v. State Comptroller, 254 U. S. 122, 41 S. Ct. 43, 65 L. Ed. 170. The state "may impose different specific taxes upon different trades and professions. * * *" Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 535, 33 L. Ed. 892.

The act in issue exacts a definite license fee. It is significant that this money is placed in the general fund of the state and appears in the relation of a taxation measure, and as such may be sustained, and if for revenue the court cannot consider the rea-

sonableness of the amount. Cooley on Taxation, vol. 1, § 29. The exercise of acknowledged power to tax may not be scrutinized by the court. The responsibility rests upon the Legislature, and if unreasonably exercised redress rests with the people. Spencer v. Merchant, 125 U. S. 355, 8 S. Ct. 921, 31 L. Ed. 763. Article 7, § 2, Constitution of Idaho, provides: "The Legislature may also impose a license tax (both upon natural persons and upon corporations, other than municipal, doing business). * * * "

The distinction between a regulatory tax and one solely for revenue is that the regulatory tax must bear reasonable relation to the cost of such regulation. State v. Nelson, 36 Idaho, 713, 213 P. 358; Standard Oil Co. v. Graves, 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662. But if imposed under the general taxing power, the amount rests wholly within the discretionary power of the taxing authority. State v. Nelson, supra; Spencer v. Merchant, supra. Existing right of taxation is unlimited, and carries inherently the power to embarrass or destroy. Austin v. Boston, 74 U. S. 694, 19 L. Ed. 224. See, also, Quong Wing v. Kirkendall, supra; Alaska Fish Salting, etc., Co. v. Smith, supra; McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561. Power to tax is the essential of political existence, and the essence of the prosperity of the state. It has not only the power to destroy, but it has also the power to keep alive. Nicol v. Ames, 173 U. S. 515, 19 S. Ct. 522, 525, 43 L. Ed. 786. "A state does not deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such a way as to favor certain industries or forms of industries." Quong Wing v. Kirkendall, supra; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. Ed. 315; Armour Pack. Co. v. Lacy, 200 U. S. 226, 235, 26 S. Ct. 232, 50 L. Ed. 451; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 562, 22 S. Ct. 431, 46 L. Ed. 679; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 92, 95, 21 S. Ct. 43, 45 L. Ed. 102; Williams v. Fears, 179 U. S. 270, 276, 21 S. Ct. 128, 45 L. Ed. 186; Cargill v. Minnesota, 180 U. S. 452, 469, 21 S. Ct. 423, 45 L. Ed. 619.

The act applies to all dealers in the state in oleomargarine, wherever made. The fact that at present none is made in the state is immaterial, and the tax is equal upon residents and nonresidents carrying on the same business. Ward v. Maryland, 12 Wall. (79 U. S.) 418, 20 L. Ed. 449. The act is not objectionable because oleomargarine is placed in a class by itself, as there is no relation between the cow and the butter, and the manufacturing plant and the oleomargarine, and apart from the commerce clause, the state may restrict the manufacture of oleomargarine in a way that does not hamper that of butter. Hammond Pack Co. v. Montana, 233 U. S. 331, 34 S. Ct. 596, 58 L. Ed. 985. See, also, section 25, title 21, USCA.

The equality clause is not infringed where the same methods and requirements are impartially applied to all the elements of a class, so that operation of the law may be equally and uniformly applied to all similarly circumstanced persons. State v. Horn, 27 Idaho, 782, 152 P. 275. And this policy may be carried out in a revenue as well as a police measure. Hammond Pack. Co. v. Montana, supra. "Legislation * * * may affect commerce and persons engaged in it without constituting a regulation of it within the meaning of the Constitution. * * * " Plumley v. Mass., 155 U. S. 461, 15 S. Ct. 154, 158, 39 L. Ed. 223. And "while a state may not use its taxing power to regulate or burden interstate commerce, * * * on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating Federal Constitutional rights." Hump Hairpin Co. v. Emmerson, 258 U. S. 291, 42 S. Ct. 305, 307, 66 L. Ed. 622. In this issue we are not concerned with the excise relation, but only with the occupation or license tax exacted of all doing such business in the state.

Placing in competition 151,722 cows in the state with a butter production on the *farms alone* of 3,661,728 pounds, with factories selling in the state more than a million pounds of oleomargarine per annum, which can be produced at a cost of from 35 to 55 per cent. of the cost of butter, and requiring the cow and the farm which supports her to contribute to the maintenance of the state and local government by taxation, and affording protection to the dealers in the state in oleomargarine, advertised by *expenditure of large sums of money,* as stated in the complaint, challenges the state's "power to keep alive."

The license fee does not attach to the commodity, but is exacted from all persons in the state engaged in selling oleomargarine, and can be no burden upon interstate commerce and repugnant to the commerce clause of the Constitution, unless sold in original packages before it passes beyond interstate commerce. And if it were a tax on

the commodity, "even if discriminatory in character," coming from Salt Lake or San Francisco, it would not be offensive after the oleomargarine had come at rest within the state and been commingled with the mass of property therein. Darnell v. Memphis, 208 U. S. 113, 118, 28 S. Ct. 247, 250, 52 L. Ed. 413. The state may tax property which has been moved in the channels of interstate commerce when such property has come at rest therein, even before sale in the original package. Woodruff v. Parham, 8 Wall. (75 U. S.) 123, 19 L. Ed. 382; Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257. The requiring of a reasonable license fee or occupation tax is not inconsistent with due process and the equal protection clause of the Fourteenth Amendment. See Bowman v. Cont. Oil Co., 256 U. S. 642, 41 S. Ct. 606, 608, 65 L. Ed. 1139.

In Askren v. Continental Oil Co., 252 U. S. 449, 40 S. Ct. 355, 356, 64 L. Ed. 654, the court said: "A business of this sort, although the gasoline was brought into the state in interstate commerce, is properly taxable by the laws of the state." If the commodity is taxable, all dealers in the same class may be taxed.

It is contended by plaintiffs that Askren v. Cont. Oil Co., supra, and Bowman v. Cont. Oil Co., supra, are decisive of every issue in this case in favor of the plaintiffs. These cases are one case; Bowman succeeded Askren as Attorney General.

Concisely stated, New Mexico requires a distributor to pay a license tax of $50 for each station, and the retailer $5 for each agency, and an excise tax is also imposed of 2 cents per gallon on all gasoline sold or used. The court held from all its provisions the act was not an inspection act merely, but in effect, a tax upon the privilege of selling gasoline in the state. The plaintiffs brought gasoline from other states to New Mexico, there to be sold and delivered. The business was in two classes: First, the gasoline was obtained in various states in tanks, barrels, etc., shipped into the state, and sold and delivered in the original packages "in the same form and condition as when received"; as to which, the court held plaintiff engaged in interstate commerce and not liable for the license tax. Second, plaintiff bought gasoline outside of the state and shipped it in tanks, barrels, etc., and sold it in quantities to suit purchaser, and the court, in the Askren Case, held that sales from broken packages are a subject of taxation within the power of the state, but did not go into the question whether the act was separable. Lat-

er, in the Bowman Case, the court held that the state might impose a license tax upon sale, etc., of gasoline in domestic commerce if it did not make its payment a condition of carrying on interstate commerce, which the state did not do by legislation, and that the disavowal of the officers of the state to enforce the act against interstate commerce is not sufficient; but also said that gasoline sold from distributing stations has passed beyond interstate commerce, and "since the tax operates impartially upon all, and with territorial uniformity throughout the state, we deem it 'equal and uniform upon subjects of taxation of the same class.' * * * The contention that it interferes with interstate commerce" is without foundation. See, also, Hart, etc., v. Harmon, etc., 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475.

The plaintiff Best Foods, Inc., is not a resident dealer within the state of Idaho; it is not required to secure a license; its business is not within range of the act. Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280; Pierce v. Society, etc., 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468, are not to the contrary. The wholesalers buy but do not sell, in interstate commerce; they sell, and the retailers buy, after the oleomargarine has been at rest in the state, passed beyond interstate commerce. The tax is uniform throughout the state, equal upon the same class of property and dealers, operates impartially, does not deprive plaintiffs of a right or property, nor infringe the "commerce clause."

Decree for defendants.

Authorities cited by plaintiff: Askren v. Cont. Oil Co., 252 U. S. 444, 40 S. Ct. 355, 64 L. Ed. 654; Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Bethlehem Motors Corp. v. Flynt, 256 U. S. 421, 41 S. Ct. 571, 65 L. Ed. 1029; Leloup v. Mobile, 127 U. S. 647, 8 S. Ct. 1380, 32 L. Ed. 311; Bowman v. Cont. Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833; Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458; Di Santo v. Pennsylvania, 273 U. S. 34, 47 S. Ct. 267, 71 L. Ed. 524; Eureka Pipe Line Co. v. Hallanan, 257 U. S. 265, 42 S. Ct. 101, 66 L. Ed. 227; Alpha Portland Cement Co. v. Mass., 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219; Crutcher v. Commonwealth of Kentucky, 141 U. S. 47, 11 S. Ct. 851, 35 L.

Ed. 649; Foster-Fountain Pack. Co. v. Haydel, 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147; Robbins v. Tax. Dist., 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Williams v. Talladega, 226 U. S. 404, 33 S. Ct. 116, 57 L. Ed. 275; Darnell v. Memphis, 208 U. S. 113, 28 S. Ct. 247, 52 L. Ed. 413; Brimmer v. Rebman, 138 U. S. 78, 11 S. Ct. 213, 35 L. Ed. 862; State of Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455; Webber v. Virginia, 103 U. S. 344, 26 L. Ed. 565; Walling v. Michigan, 116 U. S. 446, 6 S. Ct. 454, 29 L. Ed. 691; Guy v. Baltimore, 100 U. S. 434, 25 L. Ed. 743; Boyce v. French (D. C.) 293 F. 43; Austin v. Tennessee, 179 U. S. 344, 21 S. Ct. 132, 45 L. Ed. 224; Voight v. Wright, 141 U. S. 63, 11 S. Ct. 855, 35 L. Ed. 638; Castle v. Mason, 91 Ohio St. 296, 110 N. E. 463, Ann. Cas. 1917A, 164; State v. Duckworth, 5 Idaho, 642, 51 P. 456, 39 L. R. A. 365, 95 Am. St. Rep. 199; Southern Railway Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Gila Meat Co. v. State (Ariz.) 276 P. 1; Kentucky Finance Corp. v. Paramount Auto Exch. Corp., 262 U. S. 544, 43 S. Ct. 636, 67 L. Ed. 1112; Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165; City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829; Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238; Raich v. Truax, 219 F. 273 (D. C. 9th Circuit).

Authorities cited by defendants: Cooley on Taxation, vol. 1, § 27; also, id. § 29; State v. Nelson, 36 Idaho, 713, 213 P. 358; Gulf Fisheries v. MacInerney, 276 U. S. 124, 48 S. Ct. 227, 72 L. Ed. 495; Cooley on Taxation, vol. 1, § 45; article 7, § 2, Constitution of Idaho; Austin v. Boston, 74 U. S. (7 Wall.) 694, 19 L. Ed. 224; Spencer v. Merchant, 125 U. S. 355, 8 S. Ct. 921, 31 L. Ed. 763; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; Alaska, etc., Co. v. Smith, 255 U. S. 44, 41 S. Ct. 219, 65 L. Ed. 489; McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Nicol v. Ames, 173 U. S. 515, 19 S. Ct. 522, 43 L. Ed. 786; Ward v. Maryland, 79 U. S. (12 Wall.) 418, 20 L. Ed. 449; Walling v. Michigan, 116 U. S. 446, 6 S. Ct. 454, 29 L. Ed. 691; Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Hammond Pack. Co. v. Montana, 233 U. S. 331, 34 S. Ct. 596, 58 L. Ed. 985; State v. Horn, 27 Idaho, 782, 152 P. 275; Plumley v. Massachusetts, 155 U. S. 461, 15 S. Ct. 154, 39 L. Ed. 223; Hump Hairpin Co. v. Emmerson, 258 U. S. 291, 42 S. Ct. 305, 66 L. Ed. 622; Preston v. Finley (C. C.) 72 F. 850; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Bell's Gap Railroad Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Watson v. State Comptroller, 254 U. S. 122, 41 S. Ct. 43, 65 L. Ed. 170; Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499; State v. Pitney, 79 Wash. 608, 140 P. 918, Ann. Cas. 1916A, 209; Sanning v. City of Cincinnati, 81 Ohio St. 142, 90 N. E. 127, 25 L. R. A. (N. S.) 686; Powell v. Pennsylvania, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253; Armour Pack. Co. v. Snyder (C. C.) 84 F. 136; In re Scheitlin (C. C.) 99 F. 272; State v. Rogers, 95 Me. 94, 49 A. 564, 85 Am. St. Rep. 395; Commonwealth v. Huntley, 156 Mass. 236, 30 N. E. 1127, 15 L. R. A. 839; Butler v. Chambers, 36 Minn. 69, 30 N. W. 308, 1 Am. St. Rep. 638; State v. Addington, 12 Mo. App. 214; Waterbury v. Newton, 50 N. J. Law, 534, 14 A. 604; McCann v. Commonwealth Penn., 198 Pa. 509, 48 A. 470; Hathaway v. McDonald, 27 Wash. 659, 68 P. 376, 91 Am. St. Rep. 889; State v. Myers, 42 W. Va. 822, 26 S. E. 539, 35 L. R. A. 844, 57 Am. St. Rep. 887; Schollenberger v. Penn., 171 U. S. 1, 18 S. Ct. 757, 43 L. Ed. 49; Corvallis Creamery Co. v. Van Winkle (D. C.) 274 F. 454; Texas Co. v. Brown, 258 U. S. 466, 42 S. Ct. 375, 66 L. Ed. 721; Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095.